IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALTERNATIVES UNLIMITED, INC., § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-02283-BF |
| § | |
| GROUP EXCELLENCE, LTD.; § | |
| CONFIDENCE MUSIC, INC.; § | |
| CARL DORVIL, IN HIS INDIVIDUAL § | |
| CAPACITY; AND ISAAC BARNES, JR.,§ | |
| IN HIS INDIVIDUAL CAPACITY, § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before United States Magistrate Judge Paul D. Stickney. Before the Court for consideration is Defendants' Group Excellence, Ltd. ("Group Excellence") and Carl Dorvil's ("Dorvil") (collectively referred to as "Defendants") Motion for Summary Judgment (doc. 33), filed on December 16, 2011. Plaintiff filed this suit against Defendants alleging causes of action for interference with a business relationship, conversion, violation of the Texas Free Enterprise and Antitrust Act of 1983, negligent supervision, and conspiracy. Defendants contend that summary judgment should be granted in their favor on all causes of action. Plaintiff filed a response on January 13, 2012, and Defendants filed their reply on January 24, 2012. For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and enters judgment in favor of Defendants Group Excellence and Carl Dorvil.

**Standard of Review**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is

on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary-judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

Evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information that is not admissible at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *see* Fed.R.Civ.P. 56(e) ( "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ..."). This Court will consider only competent summary judgment evidence in considering whether Defendants are entitled to summary judgment.

### **Undisputed Material Facts**[1]

Plaintiff, Group Excellence, and Confidence Music, Inc. ("Confidence Music") are providers of Supplemental Education Services ("SES") to the Dallas Independent School District (the "District"). Dorvil is the Chief Executive Officer of Group Excellence. Isaac Barnes is the Chief Executive Officer

---

[1] These facts are taken collectively from Plaintiff's Second Amended Complaint, Defendants' Motion for Summary Judgment, and Plaintiff's Response to Defendants' Motion for Summary Judgment.

3

of Confidence Music. John Sullivan was President of Plaintiff's tutoring division at the time of this action, but now is Plaintiff's CEO.

Yolanda Cooper, a former employee of the District, told Mr. Sullivan that while she was working for the District she witnessed another employee, Josie Santos, receive monetary compensation from Confidence Music in exchange for preferential treatment during the 2009-2010 school year. Ms. Cooper was provided an affidavit by Mr. Sullivan, which had been typed up by Plaintiff, wherein it stated that both Group Excellence and Confidence Music gave Ms. Santos bribes in exchange for the preferential treatment. The following day, Ms. Cooper signed an affidavit that was brought to her by Beverly Bowe, another employee of Plaintiff. In addition to alleging bribes were paid by Group Excellence, the affidavit also stated that Ms. Santos' daughter works for Group Excellence. At her deposition, Ms. Cooper testified that she never saw Group Excellence give bribes to Josie Santos, and that she only saw Isaac Barnes with Confidence Music give Josie Santos monetary compensation. Ms. Cooper also testified that she told this to Mr. Sullivan and that he changed the affidavit so it no longer made allegations against Group Excellence. Ms. Cooper stated that she had already signed the affidavit, with the allegations against Group Excellence, and hadn't read the affidavit carefully before signing. At his deposition, Mr. Sullivan testified that Ms. Cooper never told him that she only saw Confidence Music giving the bribes and not Group Excellence. He testified that the language in the affidavit was never changed, but Ms. Cooper signed the affidavit the next day so it could be signed in front of a notary.

Depositions were taken of Josie Santos and Isaac Barnes. At her deposition, Ms. Santos testified that it was Isaac Barnes with Confidence Music who paid her cash in exchange for her help with the Student Learning Programs ("SLP") for Confidence Music for the 2009-2010 school year. Ms. Santos stated that she did not receive monetary compensation from Group Excellence. She also testified that

4

nobody in her family has ever worked for Group Excellence. Mr. Barnes was deposed as well and he confirmed the information that Ms. Santos provided in her deposition by admitting to paying her cash for her assistance with Confidence Music's SLP's.

Allegations were made to Plaintiff that Group Excellence altered students' SES enrollment forms by striking out Plaintiff's name as the students' first choice and replacing it with Group Excellence. Plaintiff voiced its concern over these allegations to Ms. Angela Driskill and Ms. Jean Hunter-Batty, the Federal and State Accountability Cross Coordinators for the District. At her deposition, Ms. Hunter-Batty testified that she investigated the allegations by calling the parents of the students whose forms had strike outs to inquire as to their first choice of provider. Ms. Hunter-Batty stated that all of the parents confirmed that Group Excellence was their first choice and not Plaintiff. Dr. Addie Hare is also responsible for the SES programs in the District and she was deposed as well. She testified that SES enrollment forms with strike outs were not accepted by the District, and the student would have to fill out a new form before being placed with a provider.

Allegations were also made to Plaintiff that Group Excellence had enrolled students prior to the State-mandated first day of open enrollment for SES tutoring. The first day of open enrollment was August 23, 2010, and allegations were made that Group Excellence enrolled students beginning August 1, 2010. At her deposition, Ms. Hunter-Batty testified that the enrollment forms were not made available to providers prior to August 23, 2010.

## Analysis

**Interference with a Business Relationship**

To succeed on a claim for interference with a business relationship under Texas law, a plaintiff must show: (1) the existence of a contract subject to interference; (2) willful and intentional

5

interference; (3) such intentional act was a proximate cause of plaintiff's damage; and (4) actual damage or loss occurred. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex. 1991) (citing *Juliette Fowler Homes v. Welch Associates*, 793 S.W.2d 660, 664 (Tex.1990)). Plaintiff claims that Defendants interfered with their contract with the District by employing Josie Santos to give them preferential treatment and by altering student SES enrollment forms.

Plaintiff entered into a contract with the District to provide SES services for the 2010-2011 school year. (Pl.'s Compl. at ¶26.) Thus, Plaintiff has established the existence of a contract subject to interference. The crux of Plaintiff's case against Defendants is premised upon an affidavit of Yolanda Cooper which was signed and notarized and attached to Plaintiff's Complaint. Ms. Cooper has since denied the allegations contained in the affidavit as they relate to Group Excellence. (Defs.' Mot. for Summ. J., Ex. 3A, p. 27-28.) In her deposition, Ms. Cooper adamantly denied that she ever told anyone that she saw Group Excellence pay cash to Josie Santos for preferential treatment. (*Id.*) Instead she stated that she never saw Ms. Santos accept monetary bribes from Group Excellence, and that it was only Confidence Music whom she saw paying Ms. Santos cash. (*Id.*) Further, Ms. Cooper testified that she was told what was written in the affidavit, she signed it, and then she read through it and saw that it was wrong. (*Id.* at p. 54-55.) She stated that she never would have signed the affidavit had she read it first and saw that allegations were made against Group Excellence as well as Confidence Music. (*Id.* at p. 29.) At her deposition, Ms. Cooper struck through the inaccuracies in the affidavit, leaving allegations only as to Confidence Music and not Group Excellence. (*See id.* at Ex. 2.)

Josie Santos and Isaac Barnes were deposed and their testimony confirmed Ms. Cooper's statement that it was Confidence Music that paid money to Ms. Santos and not Group Excellence. Ms.

6

Santos stated that Group Excellence never paid her any money in connection with any of her services as an employee of the District. (*Id.* at Ex. 3B, p. 16.) Instead, she testified that she only did temporary work for Confidence Music, wherein she was paid $60 for her services. (*Id.* at p. 24, 27-28.) Ms. Santos testified that she has never been employed by Group Excellence and that nobody in her family has ever been employed by Group Excellence. (*Id.* at p. 16.) Isaac Barnes was deposed and he admitted to paying Ms. Santos cash for her work on the SLP's for Confidence Music.[2] (*Id.* at Ex. 3C, p. 20, 25.)

In its Response to Defendants' Motion for Summary Judgment, Plaintiff argues that a genuine issue of material fact exists in that Ms. Cooper has now provided two conflicting stories of what she witnessed. (Pl.'s Resp. to Defs.' Mot. For Summ. J. at ¶6-8.) Plaintiff contends that Ms. Cooper signed and swore in an affidavit that she saw Group Excellence give bribes to Josie Santos, and thus, she is now changing her story by stating that she never witnessed that exchange. (*Id.*) However, in her deposition, Ms. Cooper swore that she did not read the affidavit before signing it and that she never would have signed it if she knew it contained allegations against Group Excellence. The Court finds that the affidavit that Ms. Cooper signed now just provides unsubstantiated assertions and conclusory allegations which this Court will not consider as summary judgment evidence. *See Forsyth,* 19 F.3d at 1533; *see also Eason,* 73 F.3d at 1325. Thus, viewing the remaining evidence in the light most favorable to Plaintiff, the Court cannot find that a genuine issue of material fact exists as to whether

---

[2] The Court notes that co-defendants Confidence Music and Isaac Barnes are not movants in Defendants' Motion for Summary Judgment. Plaintiff's causes of action against Confidence Music and Isaac Barnes still stand.

7

Group Excellence employed Josie Santos in exchange for preferential treatment.[3]  Ms. Cooper testified that she never witnessed Group Excellence provide monetary compensation to Ms. Santos.  Ms. Santos testified that she never worked for Group Excellence and never received cash from them, and that she only did temporary work for Confidence Music.  There is no genuine issue of material fact for trial.

The Court now turns to Plaintiff's claim that Defendants interfered with their contract by altering students' SES enrollment forms.  Plaintiff claims that a Group Excellence employee was striking through Plaintiff's name as the students' first choice on the SES enrollment forms and replacing it with their own name.  (Pl. Compl. at ¶30.)  Plaintiff alleges that these alterations occurred on or about August 24, 2010 in D.A. Hurely Middle School in the District.  (*Id.* at ¶¶30-31.)  Plaintiff voiced concerns over this allegation to the Federal and State Accountability Cross Coordinators for the District.  (*Id.* at ¶23.)  Plaintiff fails to provide either the name of the Group Excellence employee who allegedly altered the forms or the name of the person who provided this information to Plaintiff.  Instead, Plaintiff furnishes a copy of an SES enrollment form that contains Plaintiff's name as the student's first choice, with a line through it, and replaced with Group Excellence.  (*See* Defs.' Mot. For Summ. J., Ex. 4.)

Ms. Jean Hunter-Batty is the Director of Federal Accountability for the District and she investigated Plaintiff's complaint regarding the alteration of the SES enrollment forms.  (*Id.* at Ex. 3F,

---

[3] In Plaintiff's response, Plaintiff contends that even if money wasn't exchanged, Ms. Cooper still testified that Josie Santos changed SLP's in favor of Group Excellence.  (Pl.'s Resp. to Defs.' Mot. For Summ. J. at ¶20.)  Nonetheless, Ms. Cooper also stated that she was unaware of whether Group Excellence knew Ms. Santos was changing their SLP's, and that processing SLP's was one of Ms. Santos' job duties.  (*Id.* at Pl.'s App., Ex. 3, p. 28, 58-59.)  This piece of evidence does not suffice to show employment of Ms. Santos by Group Excellence, and it certainly wouldn't qualify as willful and intentional interference with a contract when there is no evidence of knowledge on behalf of Group Excellence.

p. 30.) At her deposition, she testified that she contacted the parents of the students whose forms were suspicious and contained lines striking through Plaintiff's name. (*Id.*) She stated that she was able to speak with a majority of the parents and they confirmed that they had made a mistake on the form, and Plaintiff was not their first choice, but it was Group Excellence. (*Id.* at p. 30-31.) Ms. Hunter-Batty testified that she "found no evidence" that Group Excellence had been altering the forms. (*Id.*) She also said that they receive enrollment forms in all different ways, and that some parents scratch things out instead of filling out a new form. (*Id.* at p. 31.)

Dr. Addie Hare, former SES management specialist for the District, was also deposed. It was her statement that the District did not accept enrollment forms that had Whiteout on them or scratch-outs. (*Id.* at Ex. 3E, p. 49.) She stated it was their policy to call the parents and check it out and let them know that they needed to fill out a new application. (*Id.*)

Because the alterations were alleged to have occurred at D.A. Hurely Middle School, Brian Nolan, a Special Education teacher at the school and Plaintiff's head tutor coordinator at the school, was deposed. Mr. Nolan was confused as to why he was subpoenaed by Plaintiff for a deposition. (*See id.* at Ex. 3G, p. 9.) He said that he had no information or facts for Plaintiff regarding Group Excellence or Confidence Music. (*Id.*) Mr. Nolan testified that he never expressed concern to anybody regarding the tutoring at D.A. Hurely Middle School. (*Id.* at p.10.) He stated that he didn't know what was going on with the tutoring at his school because he wasn't currently involved in tutoring. (*Id.*) When asked if he knew anything about a counselor at the school working for Group Excellence, he said "no". (*Id.* at p. 10, 13.)

Plaintiff contends that a genuine issue of material fact exists because there is still the question of who struck out Plaintiff's name on the SES enrollment forms and replaced it with Group

Excellence. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at ¶15.) Plaintiff argues that Ms. Hunter-Batty shouldn't be completely relied upon, and that even she stated that she did not know who drew a line through Plaintiff's name as the student's first choice. (*Id.* at ¶¶12-13.) It appears that Plaintiff believes that Ms. Hunter-Batty should have asked the parents how Plaintiff's name had been scratched out on the forms. (*Id.* at ¶13.) Further, Plaintiff contends that Dr. Hare's statement that forms with scratch-outs are not accepted by the District isn't true since Plaintiff has a form with its name scratched out. (*Id.* at ¶14.) Plaintiff's argument is misplaced. Ms. Hunter-Batty did testify that she did not know who drew the line through Plaintiff's name on the forms, but that is a trivial matter. It could have been the mother, the father, or the student. She didn't ask who exactly it was that made the strike-out because she had already confirmed that it was the family's mistake and that Group Excellence was their first choice and not Plaintiff. Ms. Hunter-Batty clearly stated that she found no evidence that Group Excellence was the one striking out Plaintiff's name and replacing it with their own. Further, Dr. Hare never said that forms with scratch-outs didn't exist, she just said that if they received such a form, they would contact the parents and request a new application. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that exists as to the allegation that Group Excellence altered the students' SES enrollment forms.

Because Plaintiff cannot prove willful and intentional interference by Defendants, an element which is essential to its claim and for which Plaintiff has the burden of proof at trial, its claim of interference with a business relationship fails. *See Celotex,* 477 U.S. at 322-23.

**Conversion**

To establish a claim for conversion in Texas, a plaintiff must demonstrate: (1) it owned, had

10

possession, or entitlement to possession of the property; (2) defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) plaintiff demanded return of the property; and (4) defendant refused to return the property. *Ashdon, Inc. v. Gary Brown & Associates, Inc*., 260 S.W.3d 101, 116 (Tex.App.–Houston [1 Dist.] 2008) (citing *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex.App.–Houston [1st Dist.] 2006, no pet.)).

Plaintiff claims that Defendants committed conversion in that they converted Plaintiff's proprietary interest in potential students and revenue by employing Josie Santos to give them preferential treatment and by altering student SES enrollment forms. This Court has already found that there is no genuine issue of material fact that exists for trial as to Defendants either employing Josie Santos for preferential treatment or altering the SES enrollment forms. Thus, Plaintiff will not be able to prove an essential element to their claim, that Defendants unlawfully and without authorization assumed and exercised control over Plaintiff's property. Since Plaintiff has the burden of proof at trial, this claim fails as a matter of law.

**Texas Free Enterprise and Antitrust Act of 1983**

Section 15.05(a) of the Texas Business and Commerce Code, also referred to as the Texas Free Enterprise and Antitrust Act of 1983 ("Act"), provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." TEX. BUS. & COM. CODE ANN. §15.05(a). Application of this section is to be achieved "in harmony with federal judicial interpretations of comparable federal antitrust statutes." *Id*. at §15.04. Thus, to establish a violation of the Act, a plaintiff must prove the same elements that are required for the similar Sherman Antitrust Act, 15 U.S.C. §1. *See Nafrawi v. Hendrick Medical Center,* 676 F.Supp. 770, 774 (N.D.Tex.

11

December 22, 1987). Specifically, a plaintiff must show (1) the existence of a conspiracy to restrain trade and (2) the intended restraint on trade is unreasonable. *Id.* (citing *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 988 (5th Cir.1983), *cert. denied*, 465 U.S. 1100 (1984)).

Plaintiff alleges that Defendants' actions in compensating District employees with cash and other preferential treatment in exchange for enrolling students into their SES programs constitutes a conspiracy with the intended purpose and effect of lessening competition in the SES services market. For reasons previously provided, the Court found that there is no genuine issue of material fact that Defendants compensated any District employees with cash or preferential treatment in exchange for enrolling students into their SES programs. Thus, Plaintiff cannot prove the existence of a conspiracy, an essential element to its claim and one which it has the burden of proof at trial. Consequently, Plaintiff's claim under the Texas Free Enterprise and Antitrust Act of 1983 cannot stand.

**Negligent Supervision**

To prove a claim for negligent supervision, a plaintiff must show (1) the defendant owed the plaintiff a legal duty; (2) the defendant breached that duty; and (3) the plaintiff suffered damages proximately caused by that breach. *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex.App.– Houston [14th Dist.] 2007, pet. struck). Plaintiff claims that Carl Dorvil committed negligent supervision by his failure to supervise his employees. Plaintiff fails to mention the name of any of those employees or how exactly Mr. Dorvil failed to supervise them. This Court assumes Plaintiff is referencing all of the wrongdoing which it has alleged against Group Excellence, and therefore, will analyze Plaintiff's last allegation against Defendants of early enrollment.

In its Complaint, Plaintiff alleges that parents told Ms. Bowe that Group Excellence began enrolling students on August 1, 2010, when the first day of open enrollment wasn't until August 23,

12

2010. (Pl.'s Compl. at ¶15.) Plaintiff has failed to provide the names of any of those parents. Additionally, Plaintiff chose not to depose Ms. Bowe. Thus, the Court will not consider this allegation as summary judgment evidence because it is based on hearsay and is not allowed to be considered. *See Fowler*, 68 F.3d at 126. *Assuming arguendo,* this allegation was negated by the testimony of Ms. Hunter-Batty, wherein she stated that the State did not provide the enrollment forms to the providers prior to the first day of open enrollment. (Defs.' Mot. for Summ. J., Ex. 3F, p. 28.) She then said that Group Excellence could not have been enrolling students early because they didn't have the necessary forms. (*Id.* at p. 28-29.) She also testified that she was unaware how many forms Group Excellence turned in on the first day of open enrollment. (*Id.* at p. 29.)

Plaintiff has failed to present any genuine issue of material fact that exists for any of its alleged wrongdoing against Carl Dorvil.[4] Thus, Plaintiff cannot show that Mr. Dorvil breached his duty to Plaintiff, an essential element upon which Plaintiff bears the burden of proof. Thus, Plaintiff's claim of negligent supervision as to Mr. Dorvil fails.

**Conspiracy**

Civil conspiracy is defined as a combination of two or more persons conspiring to accomplish an unlawful goal, or conspiring to accomplish a lawful goal by unlawful means. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996). In order for a defendant to be liable for conspiracy, he must also be found liable for some underlying tort for which the plaintiff seeks to hold at least one of the defendants accountable. *Id.* Plaintiff's conspiracy claim relates to the torts of interference with a business relationship and conversion in that Plaintiff alleges Defendants conspired together by compensating

---

[4] This Court has already analyzed the first two allegations of wrongdoing: employing Josie Santos for preferential treatment and altering student SES enrollment forms. The Court has found no genuine issues of material facts that exist for trial on these allegations.

Josie Santos to give them preferential treatment and by altering student SES enrollment forms. Because the Court finds that Plaintiff has failed to establish Defendants have committed any underlying torts, the Court cannot find that a genuine issue of material fact exists that Defendants committed conspiracy.

## Conclusion

Defendants have met their burden of making a prima facie demonstration that they are entitled to judgment as a matter of law because based on the undisputed facts, there is no genuine issue of material fact for trial. Accordingly, Defendants' Motion for Summary Judgment (doc. 33) is **GRANTED** and Plaintiff's claims against Defendants, Group Excellence and Carl Dorvil, are **DISMISSED WITH PREJUDICE**. Furthermore, Defendants' Motion for Reconsideration (doc. 54), filed on February 10, 2012, is **DENIED** as **MOOT**. Additionally, Defendants' Motion for Sanctions and Request for Evidentiary Hearing (doc. 38), filed on January 11, 2012, is **DENIED**.

SO ORDERED, March 5, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE